UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

_____
                                   )
HIGH ROCK WESTMINSTER STREET LLC,  )
                                   )
        Plaintiff,                 )
                                   )
        v.                         )   C.A. No. 13-500 S
                                   )
BANK OF AMERICA, N.A.,             )
                                   )
        Defendant.                 )
_____)

**ORDER**

WILLIAM E. SMITH, Chief Judge.

Before the Court is Bank of America's ("BOA") Motion to Strike Plaintiff's Jury Demand ("Motion"). (ECF No. 167.) High Rock Westminster Street LLC ("High Rock") opposes the Motion. (ECF No. 168.) For the reasons set forth below, BOA's Motion is DENIED.

I.   Background

The facts of this action are familiar to the parties. Accordingly, the Court only recounts them to the extent they are relevant to the present Motion. In 2003, Fleet National Bank ("Fleet") and Inland Real Estate Acquisitions, Inc. ("Inland") negotiated a sale-leaseback transaction for the property located at 111 Westminster Street in Providence, Rhode Island (the "Property").[1] In the transaction, Inland, through Westminster

---

[1] Subsequent to the leaseback-sale, on April 1, 2004, BOA acquired Fleet, took over occupancy of 111 Westminster, and assumed

Office 1031, L.L.C. – an acquisition company it created and controlled for the purpose of completing the 111 Westminster transaction – purchased the Property from Fleet. Fleet then leased the Property back from Inland pursuant to the terms of a ten-year lease.

The present Motion stems from a jury waiver in the transaction's Purchase and Sale Agreement ("PSA"). The PSA, dated February 28, 2003, provided:

> 35. WAIVER OF TRIAL BY JURY.
>
> SELLER AND PURCHASER HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVE ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY ACTION, SUIT OR COUNTERCLAIM ARISING IN CONNECTION WITH, OUT OF OR OTHERWISE RELATING TO THIS AGREEMENT.

(Ex. A ¶ 35 to BOA's Motion, ECF No. 167-3 (emphasis in original).)

The lease agreement (the "Lease"), entered into on April 17, 2003, did not contain a jury waiver provision, and did not reference the PSA at all, much less incorporate the PSA's waiver provision. (See Ex. B to BOA's Motion, ECF No. 167-4.) The Lease did, however, include an integration clause:

> 35.2. Entire Agreement. This Lease and the exhibits and rider, if any, attached hereto and forming a party hereof, set forth all the covenants, promises, agreements, conditions and understandings between Landlord and Tenant concerning the Premises and there are no covenants, promises, agreements, conditions or

---

Fleet's responsibilities under the lease agreement. Four years later, on January 24, 2008, High Rock bought 111 Westminster and took over Westminster's rights and responsibilities under the Lease.

2

>    understandings, either oral or written, between them
>    other than are herein set forth.  No alteration,
>    amendment, change or addition to this Lease shall be
>    binding upon Landlord or Tenant unless reduced to
>    writing and signed by each party.

(Id. at ¶ 35.2.) Further, the Lease's only exhibits were a "Legal Description of Premises" and "Subordination, Nondisturbance and Attornment Agreement," neither of which contained a jury waiver nor referenced the PSA. (See id. at 25.)

BOA and High Rock agree that both the PSA and Lease were the result of extensive negotiations between Fleet and Inland's respective legal counsel.  BOA and High Rock also agree that they each assumed Fleet and Inland's rights and obligations under the Lease.  They, however, sharply disagree over whether the PSA's jury waiver applies to the Lease.  BOA argues that the Court must consider the PSA and Lease as a single instrument in which the parties waived all rights to a jury trial for suits brought under either document.  High Rock argues that BOA is essentially asking the Court to rewrite the Lease to include a jury waiver to which neither Fleet nor Inland agreed.  As detailed below, High Rock has the better argument.

II. Discussion

"There is a presumption against denying a jury trial based on waiver, and waivers must be strictly construed." Med. Air Tech. Corp. v. Marwan Inv., Inc., 303 F.3d 11, 18 (1st Cir. 2002). Indeed, because "right of jury trial is fundamental, courts indulge

3

every reasonable presumption against waiver." Aetna Ins. Co. v. Kennedy ex rel. Bogash, 301 U.S. 389, 393 (1937). Nevertheless, parties can contract away their right to a jury where (1) the waiver unambiguously covers the claims asserted in the lawsuit; and (2) the parties knowingly and voluntarily waived the right. Med. Air Tech., 303 F.3d at 19. Here, BOA's claim fails on the ambiguity prong of this waiver analysis.

To determine if a waiver provision is unambiguous, courts first look to the plain language of the contract. Id. If the language is unclear, courts then apply the applicable state's principals of contract interpretation. See id. (construing a contractual jury waiver in Massachusetts under Massachusetts law). All of the claims at issue in this lawsuit arise from BOA's alleged breach of the Lease; none arise under provisions of the PSA. And, as noted above, the Lease does not contain a jury waiver, does not expressly incorporate any provisions of the PSA, and contains an integration clause that limits the Lease to its own terms and the exhibits attached to it. Thus, on its face, the Lease is unambiguous: it does not contain a jury waiver nor does it incorporate other agreements that contain a waiver.

To avoid this inconvenient fact, BOA argues that the PSA and the Lease constitute a single instrument under Rhode Island law, and, as a result, the PSA's jury waiver applies to the Lease. BOA is correct that, under Rhode Island law, "instruments executed at

4

the <u>same time</u>, for the <u>same purpose</u> and in the course of the <u>same transaction</u> * * * are to be considered as one instrument and are to be read and construed together." <u>Rhode Island Depositors Econ. Prot. Corp. v. Coffey & Martinelli, Ltd.</u>, 821 A.2d 222, 226-27 (R.I. 2003) (quoting <u>Old Kentucky Distributing Corp. v. Morin</u>, 146 A. 403, 404 (R.I. 1929) (emphasis added)). But its argument falters on two points. First, while BOA argues that the Lease was "executed contemporaneously with the third amendment to the [PSA]," it cites to no evidence to support this assertion. (<u>See</u> BOA's Mem. in Supp. of Mot. 8, ECF No. 167-1.) And the documents BOA does attach to its Motion contradict BOA's assertion: the PSA was dated February 28, 2003 and the Lease was dated April 17, 2003. (<u>See</u> Exs. A & B to BOA's Motion, ECF Nos. 167-3 & 167-4.) Second, while BOA argues that the PSA and Lease were part of the same transaction (the sale-leaseback of the Property), it does not articulate how the PSA and Lease were executed for the same purpose. Indeed, the documents plainly govern different relationships, with different obligations, to be carried out over vastly different time periods. The PSA related to a finite transaction (the sale of the Property), operated for a short period of time, and spelled out the obligations of the Property's buyer and seller. The Lease, on the other hand, governed the relationship between a landlord and tenant, and established their obligations to each other for a period of ten years. In short,

5

whether the PSA and Lease constitute the same instrument is, at best ambiguous, rendering application of the PSA's jury waiver to the Lease under this theory inappropriate.

Further, even if the Court were to construe the PSA and Lease as a single instrument, it would still be unclear whether the PSA's jury waiver would apply to the Lease. First, as noted above, the Lease's integration clause unambiguously limits the Lease's terms to the four corners of the documents and exhibits attached thereto. It expressly states that (1) the Lease and its attachments "set forth all the covenants, promises, agreements, conditions and understanding" between Inland; and (2) disclaims the existence of any other oral or written agreement other than those set forth in the Lease. (See Ex. B ¶ 35.2 to BOA's Motion, ECF No. 167-4.) The PSA was not attached to, nor referenced by, the Lease, and BOA has presented no authority suggesting that the Court should overlook an unambiguous integration clause even when construing instruments together.

Further, by its own terms, the PSA's jury waiver does not extend beyond suits related to the purchase of the Property. Specifically, the PSA limits the jury waiver to lawsuits and actions "arising in connection with, out of or otherwise relating to **this Agreement**." (Ex. A ¶ 35 to BOA's Motion, ECF No. 167-3 (emphasis added).) The PSA defines "Agreement" as the "Purchase and Sale Agreement" and then goes on to recount the conditions of

6

sale for the Property. (Id. at 1.)  While one condition was Fleet leasing the Property back from Inland, the PSA does not purport to govern the conduct of the parties during the Lease or otherwise incorporate the terms of the Lease into the PSA.

Finally, the Court must note – as BOA admits – that the PSA and Lease were extensively negotiated by the parties' sophisticated legal counsel, counsel who ostensibly knew the significance of waiving their respective rights to a jury trial. It strains credulity to believe that such counsel would rely on a single jury waiver in the PSA if they also intended to waive their jury rights for the ten year term of the Lease.  The more likely conclusion is that the parties did not intend to waive their right to a jury in the Lease, but only for the discrete, relatively short duration of the PSA.  In any event, the Court need not guess the intentions of capable lawyers in 2003.  The PSA's jury waiver to the Lease is, to this Court's eyes, not applicable, and, at best, ambiguous.  Particularly where the Court must indulge every reasonable presumption against waiver, BOA's Motion must be denied.

7

III. Conclusion

   For the foregoing reasons BOA's Motion to Strike Plaintiff's Jury Demand is DENIED.

IT IS SO ORDERED.

/s/ W. E. Smith
William E. Smith
Chief Judge
Date:  February 9, 2016